**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**SCOTTIE J. CALDWELL**                                                        **PLAINTIFF**

**VS.**                              **CASE NO. 3:06CV00074 HDY**

**MICHAEL J. ASTRUE, Commissioner,**
    **Social Security Administration**                              **DEFENDANT**


**ORDER**

Plaintiff has appealed the final decision of the Commissioner of the Social Security

Administration to deny his claim for disability insurance benefits (DIB).  In this judicial review,

the Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision.  42 U.S.C. § 405(g).

This Court's review function is limited to determining whether the Commissioner's

findings are supported by substantial evidence on the record as a whole.  *See Prosch v. Apfel*, 201

F.3d 1010, 1012 (8th Cir. 2000).  "Substantial evidence is less than a preponderance, but is

enough that a reasonable mind would find it adequate to support the Commissioner's

conclusions."  *Id*. The Court may not reverse merely because evidence would have supported a

contrary outcome.  *See id*.

The only disputed issue in this case is whether plaintiff is disabled within the meaning of

the Social Security Act.  Plaintiff bears the burden of establishing a physical or mental

impairment that will result in death, or that has lasted twelve months or more and has prevented

1

her from engaging in any substantial gainful activity.  42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 1382c(3)(A) and (B).

Plaintiff filed for DIB on May 16, 2003.  (Tr. 53-55).  His application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge (ALJ). Plaintiff was 33 years old at the time of the hearing, which was conducted on April 13, 2005. (Tr. 239-272).  The plaintiff was the sole witness at the hearing.  The plaintiff has the equivalent of a high school education, and has past relevant work experience as a fork lift driver, line worker, mill worker, and delivery driver.  He testified to having residual effects, including significant pain, from three back surgeries.  On July 28, 2005, the ALJ found the plaintiff was not disabled as defined in the Social Security Act.  (Tr. 11-24).  The ALJ specifically found the medical evidence established the plaintiff has lumbar degenerative disc disease with status post three surgeries and fusion,  which constituted a severe impairment.  The ALJ found, however, that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  The ALJ specifically found the plaintiff's allegations regarding his limitations were not totally credible.  The ALJ held the plaintiff has the residual functional capacity to perform sedentary work.  Using the Medical Vocational Guidelines (the "Grids"), the ALJ found that there were a significant number of jobs in the national economy which the plaintiff could perform.  As a result, the ALJ found the plaintiff was not disabled.  The Appeals Council, on February 23, 2006, denied plaintiff's request for review (Tr. 4-6), and plaintiff subsequently filed suit with this Court.

The ALJ considered his impairments by way of the familiar five-step sequential evaluation process.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether the claimant has a severe impairment or combination of impairments. *Id.*, § 404.1520©); *see* 20 C.F.R. § 404.1526. If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step three involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(d). If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id.*, § 404.1520(e). If so, benefits are denied; if not, the evaluation continues.

Step five involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience. *Id.*, § 404.1520(f). If so, benefits are denied; if not, benefits are awarded.

In support of his request for reversal, plaintiff asserts the ALJ erred in finding that his subjective allegations regarding his limitation were not credible. In addition, the plaintiff contends the ALJ's reliance upon the Medical Vocational Guidelines was error. *Plaintiff's brief at 3-11.*

We first address the plaintiff's challenge to the ALJ's credibility assessment. At the April, 2005, hearing, the plaintiff testified he was still experiencing pain related to his most recent back surgery in January of 2005. (Tr. 249). He also indicated he had pain and numbness

in his hands, could lift 5-10 pounds, walk an eighth of a mile, stand twenty minutes, and sit from

five to thirty minutes.  He also stated the pain made it very difficult to sleep.  (Tr. 255-261).  At

the close of the hearing, the ALJ engaged in a conversation with the plaintiff and his attorney

concerning the timeline of plaintiff's work history, including an attempt by the plaintiff to work

late in 2004.  The ALJ stated, "There's no doubt that you're  – I mean, I find you credible.

That's not the problem."  (Tr. 266).  The ALJ continued, "I admire you going back to work.  I

know you want to work, and you are just way too young to be having back problems, but you

clearly are.  You're way too young to be disabled, but you clearly are."  (Tr. 270).

A few months later, in July of 2005, the ALJ used the familiar *Polaski v. Heckler*, 751

F.2d 943 (8th Cir. 1984), analysis in assessing the plaintiff's credibility in the ALJ's written

opinion.  The ALJ cited the plaintiff's daily activities, which he described as a "full and active

lifestyle," as inconsistent with the plaintiff's testimony.  Also, the ALJ found that he had sought

medical treatment on an infrequent basis, and that this detracted from the plaintiff's credibility.

The ALJ further cited the plaintiff infrequent use of medication as a factor which weighed

against his credibility.  The ALJ also cited the lack of medical findings and the plaintiff's work

activity late in 2004 as inconsistencies which undermined the plaintiff's credibility.  (Tr. 17-19).

The ALJ did not mention the plaintiff's work history, which shows the plaintiff to be a consistent

wage earner beginning at age 19 with increasing wages through 2004.  (Tr. 56-58).

The ALJ erred in his credibility evaluation.  First, the ALJ overstates the plaintiff's daily

activities.  The plaintiff testified that his daily activities consisted of trying to "find a position that

doesn't hurt" and walking around the yard "for a few minutes."  (Tr. 259).  This testimony was

consistent with the interview outline the plaintiff executed in 2003, where he wrote that it hurt to

4

stand, lift, bend, or walk, and that he could do little around the house other than make a sandwich or a frozen dinner.  (Tr. 59-60).   The picture consistently painted by the plaintiff was not a full and active lifestyle; rather, the plaintiff testified to very restricted daily activities.  It was also error to fault the plaintiff for infrequent medical treatment and medication usage.  The plaintiff underwent three major back surgeries, the last of which was a fusion in January of 2005, and was taking hydrocodone for pain and Flexeril (a muscle relaxer) at the time of the administrative hearing.  The plaintiff both sought and received significant medical care and medication, and his credibility should not have been undermined by his behavior in this regard.

We also note the treating physicians were at odds on the plaintiff's outlook for work.  Dr. Davidson, in an April 2005 letter, doubted that plaintiff "will be able to return to work in any capacity."  (Tr. 167).  Dr. Engelberg, in a note from September of 2004, indicated the "chances of getting him back to work are not very good, in my judgment."  (Tr. 204).  Dr. Kornblum, however, was more optimistic, indicating in April of 2005 that the plaintiff "appears to be coming along reasonably well" and that Kornblum had asked the plaintiff to stay off work another six weeks and then resume work with a 30 pound lifting restriction.  (Tr. 236).  Thus, the objective medical evidence was not clearly supportive of the ALJ's credibility determination.

In summary, the plaintiff's testimony was drastically discounted by the ALJ, who at the hearing had commented favorably on the plaintiff's credibility.  We find error in the ALJ's credibility assessment, for the reasons described herein, and find that the case should be remanded.  We note that the credibility determination of the ALJ influenced the manner in which the case was decided, in that the ALJ relied upon the Medical Vocational Guidelines to find the plaintiff was not disabled.  On remand, the ALJ is directed to re-evaluate the plaintiff's

credibility in accordance with this opinion and to perform the sequential evaluation.  The record before the Court supports a showing of a nonexertional impairment, such as pain.  As a result, the ALJ is directed to obtain testimony from a vocational expert.  The ALJ is also free to obtain additional medical testimony, which may be especially helpful in this case given that the previous administrative hearing occurred on the heels of the plaintiff's most recent back surgery.

Having found merit in the argument advanced by the plaintiff, we remand this case for further proceedings consistent with this opinion.

DATED this __5___ day of June, 2007.

_____
UNITED STATES MAGISTRATE JUDGE